UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M. MARINKOVIC,<br><br>                Plaintiff,<br><br>v.<br><br>ADRIANNE LEE, KENDYL MAGNUSON, STAR RIVERA-LACEY, NORMA MIYAMOTO, ROBERTO RODRIGUEZ, KARTIK RAJU, MARK EVILSIZER, CHRISTIAN GARCIA, IN THEIR PERSONAL AND INDIVIDUAL CAPACITIES AND IN THEIR OFFICIAL CAPACITIES JOINTLY AND SEVERALLY, AND PALOMAR COMMUNITY COLLEGE DISTRICT,<br><br>                Defendants. | Case No.: 22-CV-998-JO-JLB<br><br>**AMENDED ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; (2) DENYING PLAINTIFF'S MOTION TO AMEND TO ADD OLD PARTIES** |

On April 26, 2024, *pro se* Plaintiff M. Marinkovic filed his Third Amended Complaint alleging he faced discrimination on account of his disability while he was a student at Palomar Community College District ("Palomar"). Dkt. 63 ("TAC"). Defendants filed a motion to dismiss Plaintiff's Third Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6). Dkt. 49. For the following reasons, the Court grants Defendants' motion and dismisses with prejudice the entirety of Plaintiff's Third Amended Complaint.

1.      Plaintiff filed his original complaint on July 7, 2022, but never served it. Dkt. 1. On his own accord, he filed a First Amended Complaint alleging (1) various §1983 claims; (2) disability discrimination claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Rehabilitation Act"); and (3) several state causes of actions against Defendants Palomar and various college officials and Board Members who worked at the school district (collectively, "Individual Defendants").[1] Dkt. 3 ("FAC"). In support of his ADA and Rehabilitation Act claims, Plaintiff alleged Defendants discriminated against him when he requested additional test-taking time that would exceed the college's standard cap for disability accommodations. FAC at ¶¶ 5–6. According to Plaintiff, the Defendants originally denied this request but granted the accommodation approximately three weeks later. FAC ¶¶ 8, 145, 148.

2.      On July 31, 2023, the Court dismissed Plaintiff's First Amended Complaint. Dkt. 23. The Court dismissed with prejudice Plaintiff's § 1983 claims against the Individual Defendants on the grounds that (1) Eleventh Amendment Immunity barred these claims against Palomar's employees and (2) Plaintiff lacked standing to seek a declaratory judgment. *Id.* at 5–8. It also declined to exercise supplemental jurisdiction over Plaintiff's various state law claims and dismissed these claims without prejudice to refiling in state court. *Id.* at 9–10. As to Plaintiff's ADA and Rehabilitation Act claims, the Court noted that Plaintiff himself alleged that Defendants granted his accommodation request two or three weeks after he asked for it. *Id.* at 8–9. On this ground, the Court found that Plaintiff failed to allege that Defendants acted with deliberate indifference and thus failed to sufficiently state a claim under the ADA or Rehabilitation Act. *Id.* at 8–9. The Court granted him leave to amend these two claims only. *Id.*

---

[1] As noted in the Court's previous order dismissing Plaintiff's FAC, the Individual Defendants included the following state employees at Palomar: Board Members Norma Miyamoto, Roberto Rodriguez, Kartik Raju, Mark Evilsizer, and Christian Garcia; College President Star Rivera-Lacy; Senior Director of Enrollment Services Kendyl Magnuson; and Director of Financial Aid Adrianne Lee. Dkt. 23.

3. Plaintiff then filed a Second Amended Complaint alleging disability discrimination claims under (1) the ADA, (2) the Rehabilitation Act, and (3) California's Unruh Act, California Civil Code § 51. Dkt. 27 ("SAC"). The Court dismissed with prejudice Plaintiff's Unruh Act claims because the Unruh Act only protects individuals from discrimination by business establishments, not public schools like Palomar. Dkt. 42 at 2; *Brennon B. v. Superior Ct.*, 13 Cal. 5th 662, 692 (2022), *reh'g denied* (Aug. 31, 2022).

4. Regarding these ADA and Rehabilitation Act claims, the Court ruled that Plaintiff's Second Amended Complaint similarly lacked factual allegations concerning Palomar's discriminatory intent or deliberate indifference. Dkt. 42. Again, Plaintiff admitted that he received his desired accommodation—giving him more test-taking time than allowed by the school's cap of double time—approximately three weeks after he requested it. SAC ¶¶ 7, 39. Additionally, Plaintiff failed to plead that he could not access certain services or benefits during those three weeks. *See* Dkt. 42; SAC. The SAC also failed to plead facts showing that Palomar knew Plaintiff needed accommodations prior to the three-week period and ignored that need. *See* Dkt. 42.

5. At oral argument and through written order, the Court instructed Plaintiff that it would dismiss his ADA and Rehabilitation Act claims but give him another chance to amend. Dkts. 40, 42. The Court explained to Plaintiff that his amended complaint needed to plead facts that (1) he had "a physical or mental impairment that substantially limits one or more of [his] major life activities," *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002); (2) he had been denied services or benefits by Palomar during the three week period he was waiting for his accommodation; and (3) Palomar had been deliberately indifferent to his need for an accommodation during the two or three week period before he received his test-taking accommodation. Dkt. 42 at 2–3.

6. Additionally, because it appeared that Plaintiff also sought to file a claim alleging that Palomar retaliated against him for seeking a disability accommodation, the Court instructed Plaintiff that he must plead the following required elements: (1) Plaintiff was engaged in protected activity; (2) Palomar took adverse action against Plaintiff; and

(3) there was a causal connection between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action. *Id.* at 3. Plaintiff was given leave to amend his SAC only with regard to his disability discrimination and retaliation claims against Palomar. *Id*. The Court also denied Plaintiff's request to revive his previously dismissed § 1983 claims by re-serving the Individual Defendants and conducting discovery. *Id.*

7. In his Third Amended Complaint, Plaintiff realleges his disability discrimination claims based on the Rehabilitation Act and ADA against Defendant Palomar. Dkt. 63 ("TAC") at 32–42, 45–47. He also alleges a retaliation claim in violation of the First and Fourteenth Amendments against the Individual Defendants. *Id.* at 42–45. He also filed other causes of action for which he did not have leave to amend. *Id.* at 47–52; Dkt. 42. The Court addresses each of these claims in turn.

8. <u>Disability Discrimination and Retaliation Claims</u>: While the Third Amended Complaint pleads numerous additional facts in an attempt to cure the deficiencies previously identified by the Court, the central allegations regarding Plaintiff's request for a test-taking accommodation remain largely the same. *Cf.* Dkts. 3, 27, 63. Once again, Plaintiff alleges that (1) he sought a test-taking accommodation that exceeded the school's standard allowance of double the test-taking time; (2) the request was denied; (3) he complained to various employees at Palomar; and (4) he received this accommodation four to five weeks later.[2] TAC ¶¶ 7–15; 32, 34–35, 73, 99 *cf. with* SAC ¶¶ 9–14, 39 and FAC ¶¶ 6–8, 145, 148. The Court dismisses these claims for failure state a claim pursuant to Federal Rule of Civil 12(b)(6).

Under Title II of the ADA, a disability discrimination claim may be based on "one of three theories of liability: disparate treatment, disparate impact, or failure to make a

---

[2] In his Third Amended Complaint, Plaintiff appears to change his previous allegations that he was granted this accommodation two to three weeks after he made his initial request. *See* FAC ¶¶ 6–8, 145, 148 (alleging two weeks until accommodation granted); SAC ¶¶ 7, 39 (alleging a three-week timeframe); TAC ¶¶ 42, 61, 68, 99 (appearing to allege a four-to-five-week delay).

reasonable accommodation." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (citing to *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016)). Because Plaintiff's allegations appear to be centered on his claims that Palomar and the Individual Defendants intentionally delayed in granting his test-taking accommodation request, the Court construes Plaintiff's allegations as a disparate treatment or intentional discrimination claim and addresses the claim accordingly.[3]

To state a prima facie case for an intentional discrimination claim in violation of Title II of the ADA, a plaintiff must show:

> (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (internal citation omitted). The elements of a prima facie Section 504 claim are similar, with the additional requirement that the plaintiff prove that "the program receives federal financial assistance." *Id.* (internal citation omitted). "A plaintiff may satisfy this second requirement by showing that the federally funded program denied [him] services that []he needed to enjoy meaningful access to the benefits of a public education and that were available as reasonable accommodations." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (citing to *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097–98 (9th Cir. 2010)). Because the elements of Plaintiff's § 504 Rehabilitation Act claim and ADA claim do not differ in respect to the relevant

---

[3] Because disparate impact claims require a showing that a specific policy caused significant adverse or disparate effect on a protected group and failure to make reasonable accommodation claims are premised on the defendant's failure to provide an individualized need, the Court finds neither theory to be applicable here considering Plaintiff's TAC focuses on an individual test-taking accommodation that he did receive. *Payan*, 11 F.4th at 738 (explaining that the difference between the two legal theories focuses on an individual need versus systemic accessibility) (collecting cases).

resolution of this motion, the Court addresses these claims together. *See Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

Here, Plaintiff fails to adequately allege the second element of a disability discrimination claim—that he was denied meaningful access to a service or benefit normally provided by Palomar because of the delay in his accommodation. Plaintiff's Third Amended Complaint appears to allege that he was denied the ability to register for upper-level science classes because of this delay. TAC ¶¶ 34–55. However, Plaintiff's contention that he could not sign up for biology classes because he had not yet been granted a test-taking accommodation is unsupported by any factual allegations. While he alleges that he anticipated needing the accommodation once the class started because the course syllabus showed that graded assignments were due in the early weeks of the class, *id.* ¶ 50, he does not allege that he was barred from registering from the biology class because he needed full accommodation approval prior to signing up. Further, by his own allegations, it appears that his inability to sign up for this particular biology class was due to the school's need to verify that he had taken the appropriate prerequisites for the upper-level biology class, *id.* ¶ 45, not because he could not register before receiving accommodation approval. *Id.* ¶¶ 45–55. He therefore fails to allege that he was denied any services or benefits because of the four or five-week delay in processing his accommodation request. Aside from alleging that he was not granted his accommodation in time to register for an upper-level biology class, *id.* ¶¶ 45–47, Plaintiff fails to identify any other services or benefits that Palomar denied him during the four or five-week time frame he was waiting to hear about this test-taking accommodation. Plaintiff therefore fails to plausibly allege he was excluded from participating in or denied the benefits of a public entity's services, programs, or activities.

Additionally, Plaintiff fails to plead that Palomar[4] acted with deliberate indifference

---

[4] While Plaintiff's Fourth Claim pleads a separate claim for "reckless or deliberate indifference" against the Individual Defendants, TAC ¶¶ 45–47, deliberate indifference is not a separate cause of action

toward his disability needs in delaying their grant of his accommodation request by four or five weeks. To establish that a defendant has been "deliberatively indifferent" in violation of the ADA and Rehabilitation Act, the plaintiff must prove (1) the defendant was on notice that the accommodation was required; (2) his failure to act was a result of conduct that was more than negligent; and (3) the conduct involved an element of deliberateness. *Updike v. Multnomah Cnty.*, 870 F.3d 939, 950–51 (9th Cir. 2017) (citing to *Duvall*, 260 F.3d at 1139) ("[D]eliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course.")) This "failure to act must be a result of conduct that is more than negligent[,]" and it requires both knowledge that a protected right is substantially likely to be infringed upon, and a failure to act upon that knowledge. *Duval*, 260 F.3d at 1139.

Here, Plaintiff fails to allege that Palomar withheld the test-taking accommodations for four or five weeks knowing that Plaintiff's rights would be infringed in the meantime. Instead, his allegations show that the school promptly responded to his complaints rather than ignore them. *See* TAC ¶¶ 35, 40–42, 61–74. When he protested the school's denial of his initial request for an accommodation, he was informed that his complaints would be conveyed to the office director. *Id.* ¶¶ 61, 63. Plaintiff was able to speak with the disability office director, Dr. Moriarty just one week after the initial denial. *Id.* Additionally, after he complained, Palomar then fully granted his request for extra test-taking time—exceeding the school's usual policy of a maximum of double the test-taking time—approximately four or five weeks after he made his original request. *See id.* ¶¶ 61–74. Beyond conclusory allegations, Plaintiff alleges no facts that indicate that Palomar employees acted in knowing disregard of his needs. Moreover, he alleges no facts that

---

but a specific pleading requirement for a plaintiff to obtain compensatory damages under the ADA or § 504 Rehabilitation Act. *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) ("[C]ompensatory damages are not available under Title II or § 504 absent a showing of discriminatory intent."(quoting *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 1998))). Thus, the Court will construe the facts alleged in Plaintiff's Fourth Claim as additional support for Plaintiff's ADA and Rehabilitation Act claims against Palomar.

demonstrate that he suffered any prejudice as a result of this delay—as discussed above he was unable to register for upper-level biology courses due to his lack of prerequisites, not because he did not receive the accommodation—much less that Palomar knew about the harmful impact on him and failed to act. *See id.* ¶ 45.

In an attempt to cure the pleading deficiencies previously noted by the Court, Plaintiff added new factual allegations about several new discriminatory policies in his Third Amended Complaint. *Id.* ¶¶ 34, 37, 44, 57–60. These additional allegations, however, do not address how Palomar's approximately four-week delay in granting test-taking accommodations deprived him of services or constituted deliberate indifference to his needs during this time period. To the extent Plaintiff sought to plead other theories of deliberate indifference against the Individual Defendants or Palomar, Plaintiff was neither given leave to amend to assert these new claims, nor has he pled facts to make the nature of these claims intelligible—violating Rule 8's requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).

Because Plaintiff fails to plead that Palomar denied him a service or benefit and that the Individual Defendants were deliberately indifferent to his disability needs when they delayed in granting his test-taking accommodation request, the Court dismisses with prejudice Plaintiff's First, Second, and Fourth Claims for disability discrimination under the ADA and Rehabilitation Act.

9. <u>Plaintiff's Retaliation Claim</u>: Although the Court granted Plaintiff leave to amend his retaliation claim under the ADA or Rehabilitation Act, Plaintiff's Third Claim instead alleges a retaliation claim based on the First and Fourteenth Amendment. Dkts. 42 at 2–3; 63 at 42–45. Plaintiff alleges that the Individual Defendants retaliated against him for seeking a test-taking accommodation by denying his tuition discount requests and not allowing him to drop his philosophy class. TAC ¶¶ 86–158, 212–227. For the below reasons, the Court dismisses Plaintiff's First and Fourteenth Amendment retaliation claim

for failure state a claim pursuant to Federal Rule of Civil 12(b)(6). [5]

To state a First Amendment retaliation claim, "a plaintiff must plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. County of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (internal citations and quotation marks omitted). In order to find a defendant directly liable, a plaintiff must demonstrate that the defendant had an "intent to inhibit speech," *Mendocino Env't Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999), and that there was a "causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal citation and quotation marks omitted). Additionally, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399. "An allegation is not plausible where there is an obvious alternative explanation for alleged [retaliatory] misconduct." *Capp*, 940 F.3d at 1055 (internal citations and quotation marks omitted).

Here, Plaintiff's retaliation claim fails because he has not pled any facts to establish that the Individual Defendants denied his tuition discount request in order to punish Plaintiff for requesting a disability accommodation and complaining about the initial denial or to deter such actions. *Mendocino*, 192 F.3d at 1032. He makes conclusory allegations that the delays in processing his tuition discount request were pretextual because "the Palomar TRUSTEES swung into action to cover up the illegality of their custom and

---

[5] The Court focuses its analysis on Plaintiff's First Amendment retaliation claim although his Third Claim states he is asserting a cause of action "For Retaliation In Violation of the 1st and 14th Amendments," because the essence of his claim against the Individual Defendants centers on allegations that he faced retaliation after requesting his test-taking accommodation, not that his due process or equal protection rights under the Fourteenth Amendment were violated. *See* TAC ¶¶ 86–158, 212–227.

practice," TAC ¶ 76, but offers no facts to support a causal connection between any retaliatory animus and the denial of the tuition discount requests. In fact, Plaintiff's own pleadings establish that the college's employees denied the tuition discount requests for a host of reasons, including Plaintiff's refusal to comply with the standard application process and provide a Social Security number, a government ID, a home address, and a phone number. *Id.* ¶¶ 88, 93, 102–103, 109–110, 112, 115. Given the obvious alternative explanation for the denial of the tuition discount requests and the absence of any facts showing an intent by the Individual Defendants to discourage protected activities like requesting disability accommodations, Plaintiff fails to state a plausible First Amendment retaliation claim on this ground. *See, e.g.*, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014) (affirming dismissal where plaintiff's allegation was only "merely possible rather than plausible" in face of obvious alternative explanation).

Plaintiff's retaliation claim also fails because he has not sufficiently pled any facts to support a causal link between his inability to drop out of his last philosophy class and his test-taking accommodation requests. *See* TAC ¶¶ 117–125. While he makes conclusory allegations that the "TRUSTEES themselves also prevented plaintiff from dropping classes" in order to "intentionally hurt plaintiff and destroy his career," *id.* ¶ 121, he alleges no facts to support a causal connection between this action and any retaliatory animus stemming from his accommodation requests. In fact, his complaint demonstrates that all students, not just Plaintiff, were subject to the same mandatory deadline to drop classes without the penalty of a negative grade. *Id.* ¶¶ 121, 123. Moreover, his pleadings appear to indicate that he may not have been able to drop the last philosophy class because of outstanding fees owed to Palomar, as he alleges "he was not allowed to reach the page to drop classes unless he (1) acknowledged through the computer that he owed the college $500 and (2) paid it and (3) agreed to obey all other college rules whether legal or not." *Id.* ¶ 118. Given the obvious alternative explanations for Plaintiff's inability to drop his last philosophy class and the absence of any facts showing an intent to deter speech, Plaintiff fails to state a plausible First Amendment and Fourteenth Amended retaliation

claim on this ground. *See, e.g.*, *Gonzalez*, 759 F.3d at 1116. Because Plaintiff fails to plausibly plead a claim for First and Fourteenth Amendment retaliation, the Court dismisses these claims with prejudice.

10. <u>Section 1983 Claims</u>: Plaintiff's Fifth Claim alleges a new theory of § 1983 violation against the Individual Defendants in their individual capacities. TAC at 47–51. Although the Court previously dismissed Plaintiff's § 1983 claims against the Individual Defendants with prejudice on the grounds that Plaintiff's tuition discount claims were barred by the Eleventh Amendment, Plaintiff now asserts this claim based on his dissatisfaction with the length of time the Individual Defendants took to process his test-taking accommodation request. *Id.* ¶¶ 236–248. First, Plaintiff was neither given leave to amend his prior § 1983 claims nor was he given leave to add new claims. *See* Dkts. 23, 42. Second, because Plaintiff's new § 1983 claim appears to seek to hold the Individual Defendants liable for violations of the ADA and Rehabilitation Act based on their actions when processing his accommodation request, Plaintiff cannot proceed on this claim. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a state official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act.").

Because Plaintiff fails to sufficiently plead a viable § 1983 claim pursuant to Federal Rule of Civil 12(b)(6), the Court dismisses this claim with prejudice.

11. <u>State Claim</u>: Plaintiff's Sixth Claim alleges what appears to be a state law claim for intentional interference with prospective economic advantage against the Individual Defendants in their individual capacities. TAC at 51–52.[6] Plaintiff contends that the Individual Defendants committed interference his prospective economic advantage when they interfered with his ability to obtain his necessary courses at Palomar College,

---

[6] Plaintiff asserted a Sixth Claim titled "Common Law Interference with Prospective Economic Advantage and Career" which the Court construes as a claim for the tort of intentional interference with prospective economic advantage.

obstructing his efforts to obtain a patent license, attend further graduate programs, secure high-paying employment, and pursue a romantic partner. *Id.* For the below reasons, the Court dismisses Plaintiff's Sixth Claim for failure state a claim pursuant to Federal Rule of Civil 12(b)(6).

To establish the tort of intentional interference with prospective economic advantage, a plaintiff must show "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521–522 (1996) (internal citation and quotation marks omitted). To bring such a claim, a plaintiff must allege that there is a "specific existing relationship," not simply a potential future relationship, that defendant disrupted. *Id.* at 525. Without a specific existing relationship, a plaintiff's expectation for the future is at best "a hope for an economic relationship and a desire for future benefit," which cannot be acted upon. *Id.* at 527 (internal citation and quotation marks omitted).

Here, Plaintiff failed to state a claim for intentional interference with prospective economic advantage because he did not plead an "existing relationship" with any future employers or educational institutions, let alone any relationships that Individual Defendants intentionally sought to disrupt. *See* FAC. Instead, Plaintiff asserted that if he had been able to complete the upper division science classes he sought to take at Palomar, a series of outcomes would have ensued: he would have (1) passed the patent agent examination; (2) simultaneously worked as a patent agent at a law firm while completing engineering courses at Columbia University; (3) obtained attorney admission to the New York state bar; (4) passed the patent bar exam; (5) obtained a career as a patent attorney at a law firm; and (5) consequently, earn a very high income. *Id.* at 6–9, 20, 35–38, 51–52. However, aside from his hopeful speculations, Plaintiff has neither pled that he had an

existing relationship with any institution nor alleged a likelihood of such future relationships. *Westside*, 42 Cal. App. 4th at 527. Moreover, because Plaintiff clearly bases his claim on these speculative and attenuated possibilities rather than any actual "existing relationship," it appears that amendment would be futile here. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (finding leave to amend futile where "plaintiffs cannot cure the basic flaw in their pleading").

Because Plaintiff's claim for intentional interference with prospective economic advantage fails to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses this claim without leave to amend.

12. <u>Motion to Amend</u>: Finally, the Court denies Plaintiff's motion to "Amend to Add Old Parties," Dkt. 54, to the extent Plaintiff is attempting to revive his previous §1983 claims against the Individual Defendants in their official capacity. These claims were previously dismissed with prejudice from Plaintiff's FAC on the grounds that the Eleventh Amendment bars such claims, and any further amendment would have been futile. *See* Dkt. 23. The Court will not authorize Plaintiff to reallege the same previously dismissed claims.

13. <u>Leave to Amend</u>: Federal Rule of Civil Procedure 15 states that courts "should freely give leave [to amend] when justice so requires." Moreover, "[t]he Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)). "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has 'wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will [its] rulings be disturbed.'" *Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (quoting *Heay v. Phillips*, 201 F.2d 220, 222 (9th Cir.

1952)).

Here, the Court has afforded Plaintiff multiple opportunities to amend the complaint and address his discrimination claims under the ADA and Rehabilitation Act. *See* Dkts. 23, 42. Despite the opportunities afforded to Plaintiff, he has repeatedly failed to state a claim for discrimination under the ADA or Rehabilitation Act. *See id.* Additionally, even though Plaintiff failed to properly assert a retaliation claim under the ADA or Rehabilitation Act in his Second Amended Complaint, the Court afforded Plaintiff an opportunity to reframe and sufficiently plead his retaliation claim. Dkt. 42. Despite this opportunity, Plaintiff continues to fail to properly assert a retaliation claim. Accordingly, the Court, exercising its "wide discretion," finds that further leave to amend Plaintiff's claims would be futile. *Allen v. Diaz*, No. 20-CV-1389 JLS (LR), 2023 WL 4728794, at *10 (S.D. Cal. July 24, 2023) (dismissing third amended complaint without leave to amend after plaintiff failed to cure pleading defects despite three opportunities to amend) *reconsideration denied*, No. 20-CV-1389 JLS (MDD), 2023 WL 6593834 (S.D. Cal. Sept. 5, 2023); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad.") (internal quotation marks omitted) (second alteration in original).

In sum, the Court GRANTS Defendants' motion to dismiss Plaintiff's Third Amended Complaint. Dkt. 49. The Court dismisses with prejudice Plaintiff's First, Second, Third, Fourth, Fifth and Sixth claims. The Court also DENIES Plaintiff's request to revive his previously dismissed § 1983 claims. Dkt. 54. The Clerk of Court is directed to CLOSE the case.

**IT IS SO ORDERED.**

Dated: February 12, 2025

_____
Honorable Jinsook Ohta
United States District Judge